**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TARGET CORPORATION**, a Minnesota corporation,<br><br>Plaintiff,<br><br>-vs-<br><br>**NAMDAR REALTY, L.L.C**, a New York limited liability company, and **JACKSON CROSSING REALTY, L.L.C.**, a Michigan limited liability company,<br><br>Defendants. | Case No.<br><br>Hon.<br><br>Mag. |

DAWDA PLC
John Mucha III (P40907)
James A. Ryan (P87944)
39533 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
(248) 642-3700
jmucha@dawdalaw.com
jryan@dawdalaw.com
Attorneys for Plaintiff

**COMPLAINT**

Plaintiff Target Corporation, by and through its undersigned counsel, states and alleges for its Complaint against Defendants Namdar Realty LLC and Jackson Crossing Realty LLC as follows:

## INTRODUCTION

1. Target Corporation ("Target") is a Minnesota corporation with its principal executive office at 1000 Nicollet Mall, Minneapolis, MN 55403.

2. Upon information and belief, Jackson Crossing Realty LLC ("Jackson") is a limited liability corporation, owned by Namdar Realty LLC ("Namdar"), with its principal place of business located at 150 Great Neck Road, Suite 304, Great Neck, NY, which owns the real property located at 1076 Jackson Crossing, Jackson, MI 49202 ("Shopping Center").

3. Jackson Crossing Realty LLC's registered office is located at 40600 Ann Arbor Road E, Suite 201, Plymouth, MI 48170.

4. A corporation is deemed to be a citizen of both the state of its incorporation as well as the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (defining a corporation's principal place of business as the "place where a corporation's officers direct, control, and coordinate the corporation's activities"). As such, Target is deemed a citizen of Minnesota only since it was incorporated in Minnesota and its principal place of business is also located there. As such, there is diversity in citizenship between the named parties sufficient to satisfy the plain language provisions of 28 U.S.C. § 1332.

5. Jurisdiction is conferred on this Court by 28 U.S.C. § 1332 as this case involves parties that exhibit diversity and because, for the amount in controversy purposes, the value of relief sought by Target exceeds $75,000.00. *See Hale v. Morgan Stanley Smith Barney, LLC*, 982 F.3d 996, 997 (6th Cir. 2020).

6. Venue is proper in the United States District Court for the Eastern District of Michigan as Jackson, Michigan is where the property that is subject to the action is located under 28 U.S.C. § 1391(b).

## **FACTUAL ALLEGATIONS**

7. On March 15, 1990, Ramco Jackson Associates Limited Partnership ("Ramco") and Target entered into an Operation and Easement Agreement recorded by Jackson County (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 1.

8. On the same day, Ramco and Target entered into a Supplemental Restriction Agreement (the "Supplemental Agreement"). A true and correct copy of the Supplemental Agreement is attached as Exhibit 2.

9. Under Section 1 of the Supplemental Agreement, Operator shall maintain the Common Areas in the manners as described in Section 4.2 of the Agreement. Ex. 2.

10. Target must pay its proportionate share of the Common Area Maintenance Costs ("CAM Costs") in accordance with Section 5 of the Supplemental Agreement. Ex. 2.

11. Pursuant to Section 5 of the Agreement, Operator shall furnish Target with a statement certified by an officer of the actual amount of Target's proportionate share such costs and expenses for such period together with such supporting invoices and other materials as Target may reasonably request. Ex. 1.

12. In the event that Target paid more than the amount actually due, such excess shall be refunded to Target by Operator at the time such certified statement is delivered under Section 5 of the Supplemental Agreement. Ex. 2.

13. Pursuant to Section 6 of the Supplemental Agreement, Target shall have the right to audit Operator's books and records pertaining to the operation and maintenance of the Common Area for the calendar year, the cost of any audit shall be assumed by Target, unless Target shall be entitled to a refund which is in excess of three percent (3%) of the amount calculated by Operator as Target's share for the calendar year, in which case Operator shall pay the cost of such audit. Ex. 2.

14. Pursuant to Section 11 of the Supplemental Agreement, all covenants, agreements, conditions set forth are intended to be and shall be construed as covenants running with the land, inuring the benefit of the parties and their respective successors and assigns. Ex. 2.

15. Upon information and belief, Jackson, owned and managed by Namdar, has been the Operator of the Shopping Center since 2021. A true and correct copy of the Updated Remittance Address is attached as Exhibit 3.

16. Target engaged a third-party accounting firm to audit the Target location situated at the Shopping Center.

17. As part of Target's audit of Operator's books, Target discovered that from 2018 to 2021, Operator had an error in overstatement in excess of three percent (3%) of Target's share of CAM Costs for each calendar year. Consequently, pursuant to Section 6 of the Supplemental Agreement, Operator "shall pay the cost of such audit." Ex. 2.

18. On February 2, 2023, Target sent a Notice of Default regarding the concerns identified above. A true and correct copy of the Notice of Default is attached as Exhibit 4.

19. However, Operator failed to refund Target the amount of such overpayment.

20. On June 15, 2023, Target sent a Second Notice of Default regarding the concerns identified above. A true and correct copy of the Second Notice of Default is attached as Exhibit 5.

21. Due to Operator's breach of its obligations under the Agreement, Operator is in default of the Agreement pursuant to Section 6.1. Ex. 1.

22. Operator has failed to cure its default.

23. Target sent Operator a Demand for Payment on October 10, 2025. A true and correct copy of the Demand for Payment is attached as Exhibit 6.

24. The October 10, 2025, Demand for Payment formally demanded Operator to immediately remit payment to Target in the amount of $377,744.32 for excess CAM Costs and the costs of the associated audit. Ex. 6.

25. To date, Operator has failed and/or refused to reimburse Target for (i) the overpayments Target issued to Operator as a direct and proximate result of Operator's errors in calculating Target's share of CAM Costs, and (ii) the incurred costs of the associated audit, as required pursuant to the Supplemental Agreement. *see* Ex. 2, Sec. 6.

## COUNT I

## BREACH OF CONTRACT

26. Target incorporates by reference each allegation set forth above.

27. Target and Operator entered into the Agreement under which Target agreed to pay its proportionate share of the CAM Costs for the Shopping Center. Ex. 1.

28. Target issued payments to Operator in excess of its proportionate share of the CAM Costs for the Shopping Center as a direct and proximate result of Operator's errors in calculating Target's share of CAM Costs.

29. Target provided Operator with multiple notices of default under the Agreement and Supplemental Agreement (Ex. 4, Ex. 5) and formally demanded that Operator remit Target's payments made in excess of its proportionate share of CAM Costs. Ex. 6.

30. Operator has breached the Agreement by failing to reimburse Target for amounts paid over its share of CAM Costs under Section 5 of the Supplemental Agreement. Ex. 2.

31. After Target executed its right to audit pursuant to Section 6 of the Supplemental Agreement, Operator has refused to reimburse Target as required pursuant to the Supplemental Agreement. Ex. 2.

32. As a direct and proximate result of Operator's breach of the Agreement, Target has suffered damages in an amount in excess of $75,000 to be determined at trial.

**WHEREFORE**, Plaintiff Target requests that this Court award the following relief against Defendants Namdar and Jackson by:

i. Awarding Target damages in an exact amount to be determined at trial resulting from Defendants' breach of the Agreement, including but not limited to (i) excess CAM Costs paid by Target and (ii) all costs of the associated audit;

ii. Awarding Target its costs and disbursements, including attorneys' fees, incurred herein; and

iii. Grant any other relief as the Court shall determine is just and appropriate.

**COUNT II**

**UNJUST ENRICHMENT**

33. Target incorporates by reference each allegation set forth above, and pleads this Count II in the alternative to Count I in the event that Count I does not provide full relief to Plaintiff.

34. Target conferred an appreciated benefit on Operator by overpaying for its proportionate share of CAM Costs at the Shopping Center.

35. Target issued payments to Operator in excess of its proportionate share of the CAM Costs for the Shopping Center as a direct and proximate result of Operator's errors in calculating Target's share of CAM Costs.

36. Operator was aware that Target had conferred this benefit and accepted the benefit.

37. Target provided Operator with multiple notices of default under the Agreement and Supplemental Agreement (Ex. 4, Ex. 5) and formally demanded that Operator remit Target's payments made in excess of its proportionate share of CAM Costs. Ex. 6.

38. Target has not been reimbursed for the overpayments of its proportionate share of the CAM Costs at the Shopping Center.

39. Operator has retained, utilized, and enjoyed the appreciated benefits that Target conferred upon it by retaining the overpayment of Target's proportionate share of CAM Costs at the Shopping Center.

40. Operator has been unjustly enriched by the benefit Target has conferred upon it.

**WHEREFORE**, Plaintiff Target requests that this Court award the following relief against Defendants Namdar and Jackson, to the extent not fully compensated under Count I, by:

i. Awarding Target damages in an exact amount to be determined at trial, resulting from Defendants' breach of the Agreement, including but not limited to (i) excess CAM Costs paid by Target and (ii) all costs of the associated audit;

ii. Awarding Target its costs and disbursements, including attorneys' fees, incurred herein; and

iii. Grant any other relief as the Court shall determine is just and appropriate.

Respectfully submitted,

DAWDA PLC

*/s/ John Mucha III*
39533 Woodward Avenue, Suite 200
John Mucha III (P40907)
James A. Ryan (P87944)
Bloomfield Hills, MI 48304
(248) 642-3700
jmucha@dawdalaw.com
jryan@dawdalaw.com
*Attorneys for Plaintiff*

Dated: September 2, 2026

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**TARGET CORPORATION**,
a Minnesota corporation,

Plaintiff,

-vs-

**NAMDAR REALTY, L.L.C**,
a New York limited liability
company, and **JACKSON CROSSING REALTY, L.L.C.**, a Michigan
limited liability company,

Defendants.

Case No.

Hon.

Mag.

DAWDA PLC
John Mucha III (P40907)
James A. Ryan (P87944)
39533 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
(248) 642-3700
jmucha@dawdalaw.com
jryan@dawdalaw.com
Attorneys for Plaintiff

**INDEX OF EXHIBITS TO COMPLAINT**

| | |
|---|---|
| Exhibit 1: | Operation and Easement Agreement, dated March 15, 1990, relating to the Shopping Center. |
| Exhibit 2: | Supplemental Restriction Agreement, dated March 15, 1990, relating to the Shopping Center. |

| | |
|---|---|
| Exhibit 3: | Updated Remittance Address for Target #T-0673A, Jackson Crossing, Jackson, MI, dated August 30, 2021. |
| Exhibit 4: | Letter dated February 2, 2023; Audit of 2018-2021 CAM Reconciliations at Jackson Crossing Shopping Center. |
| Exhibit 5: | Letter dated June 15, 2023; Notice of Default. |
| Exhibit 6: | Letter dated October 10, 2025; Demand for Payment. |